## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-CV-20680-RNS

SUSAN KHOURY,

        Plaintiff,

v.

THE MIAMI-DADE COUNTY
SCHOOL BOARD, etc., et al.,

        Defendants.

_____/

## RESPONSE IN OPPOSITION TO OFFICER GREGORY WILLIAMS'
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Susan Khoury ("Ms. Khoury"), responds to Gregory Williams's ("Officer Williams") Motion for Summary Judgment filed on November 29, 2017, [D.E. 147], and says:

### PRELIMINARY STATEMENT

Officer Williams would have been well served by following the advice of now deceased U.S. Senator Daniel P. Moynihan, when he penned his motion: "*Everyone is entitled to his own opinion, but not his own facts*."  Instead, he *tip toes* the line of ethics by claiming that certain facts are "undisputed," when he clearly knows otherwise, apparently ignoring the mandate of presenting undisputed facts.  As the record shows, Ms. Khoury's version of the facts contradicts Officer Williams' account of what happened on just about every material fact, as does the video evidence in this case.

Nevertheless, incredulously, Officer Williams urges a new standard, that the Court ought disregard Ms. Khoury's testimony because it is "self-serving."  Unfortunately for Officer Williams, that is not the law, and courts are not free to disregard statements during summary

judgment, even if they are "self-serving."  And, the Eleventh Circuit has explained this principle I some of the very cases cited by Officer Williams. Frankly, it is difficult to understand how he ignored them.

## ARGUMENT

### I.     SUMMARY JUDGMENT IS INAPPROPRIATE BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACTS.

Officer Williams's motion violates the cardinal rule of summary judgment jurisprudence, that such a remedy is only when a moving party demonstrates that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Factual disputes are "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A fact is "material" if it might affect the outcome of the suit under the governing substantive law.  *Id.* at 247.

In *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970), the Supreme Court explained that "when assessing whether the movant has met this burden, a court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion." If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial.  *Clemons v. Dougherty Cnty*., 684 F.2d 1365, 1368–69 (11th Cir.1982).[1]

Furthermore, when a motion for summary judgment turns on an issue of credibility, summary judgment is inappropriate.  *Allen-Sherrod v. Henry County School Dist*., 248 Fed. Appx.

---

[1] The standard for summary judgment is echoed under Florida law. *See Medina v. Yoder Auto Sales, Inc.,* 743 So. 2d 621 (Fla. 2d DCA 1999) (holding that summary judgment is improper if the record raises the slightest doubt that a factual issue might exist).

145 (11th Cir. 2007)("[i]n determining the propriety of summary judgment, credibility determinations may not be made"); *Amsted Industries, Inc. v. Buckeye Steel Castings Co*., 24 F. 3d 178, 183 (Fed. Cir. 1994)(it is within the province of the jury to determine the credibility of a *witness* and the weight to be given his testimony); *Sutherland v. Pell,* 738 So. 2d 1016 (Fla. 2d DCA 1999). "Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Clemons*, 684 F.2d at 1368–69; *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)("when conflicts arise between the facts evidenced by the parties, they must credit the nonmoving party's version.").

Here, it is inconceivable that Officer Williams reasonably believed that summary judgment is appropriate – too many material facts are in dispute. For instance,

a. Officer Williams claims that Ms. Khoury, a 56-year-old, 5'3" woman, pushed him, a 200-pound, 24-year Army veteran with Special Forces training,[2] down to the ground. Ms. Khoury testified that she never pushed Officer Williams and he never fell to the ground. (KSMF at 42).[3] Contrarily, Ms. Khoury testified that Officer Williams grabbed her arm, twisted it behind her back, and pushed her to the ground. (KSMF at 33). Officer Williams claims that, "As I stumbled, Ms. Khoury [did] a flop on the ground, just boom." (KSMF at 102).

b. Additionally, the video evidence does not support Officer Williams claim - neither video shows him on the ground at all. (KSMF at 33). However, Ms. Khoury's cell

---

[2] See (KSMF at 2, 27).
[3] Ms. Khoury references her statement of material facts as "KSMF" followed by the paragraph number.

phone video does show Officer Williams charging toward her while stating in a menacing voice, "Why are you filming me!"[4]  (KSMF at 33).  Although the video turns off, any reasonable jury can infer what happened.

c.  Officer Williams also claims that Ms. Khoury "could not understand that the cars next to the baseball field were parked legally."  The unbiased video shows a vehicle parked facing the opposite way of traffic, which is clearly illegal.  (KSMF at 31).

d.  Finally, Officer Williams claims that Ms. Khoury did not understand that he was a police officer.  [D.E. 147, pg. 10].  This "fairytale" interpretation is totally ridiculous and the unbiased videos, again, show otherwise.  When Ms. Khoury turned on her camera, the very first words out of her mouth were, "Hey ***officer***, can you tell me your name please."  (KSMF at 82, 100).  The use of the word "officer" clearly suggests that Ms. Khoury knew that Officer Williams was in fact a police officer.[5]

e.  Finally, when Jose Corraliza (Ms. Khoury's neighbor) responded to the scene, and Ms. Khoury asked him to "call the police, call Metro-Dade," Mr. Corraliza told her, "Calm down Susan, this is a police officer."  (KSMF at 82).  Ms. Khoury immediately told Mr. Corraliza that Officer Williams was "a ***School Board officer***" and that he tried to take her phone away because she was recording him.  (KSMF at 82).  Officer Williams was standing right next to Ms. Khoury when she said that to Mr. Corraliza.  (KSMF at

---

[4] Ironically, Officer Williams claims that he told Ms. Zubillaga that Ms. Khoury had the right to film and take photographs of people.  Officer Williams' supposed statement conflicts with his actions on camera.

[5] When Officer Williams attacked Ms. Khoury, she immediately stated: "False arrest sir, false arrest.  I did not do anything wrong."  By using the words "false arrest," it is clear that Ms. Khoury knew that Officer Williams was a police officer.

82).  Officer Williams' "creative" interpretation of the facts is nonsensical, at best, and a clear indication that material facts are in dispute.

As previously noted, Officer Williams's strategy for dealing with these contradictory facts is to reject Ms. Khoury's version because they are "self-serving."  Officer Williams is flat-out wrong.  As the Eleventh Circuit stated in *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253-54 (11th Cir. 2013), "courts must credit the nonmoving party's version of events."  In explaining why court must take a plaintiff's "self-serving" statement as true, the Eleventh Circuit stated:

> Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. As we stated in *Price v. Time, Inc.,* 416 F.3d 1327, 1345 (11th Cir. 2005), "[c]ourts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving." Or as Justice Bleckley put it, the law allows that "[i]nterest and truth may go together." *Davis*, 60 Ga. at 333. Besides, Feliciano's sworn statements are no more conclusory, self-serving, or unsubstantiated by objective evidence than the officers' assertions that they smelled marijuana coming from her apartment and saw Gonzaga smoking or holding a joint. *Id.*

Federal court have repeatedly stated that  "[a] plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature."  *Id*; citing *Scott v. Harris,* 550 U.S. 372, 380–81 (2007) (holding that a court should not adopt a party's version of the facts when it is "blatantly contradicted by the record" in the form of videotaped evidence); *Holley Equip. Co. v. Credit Alliance Corp.,* 821 F.2d 1531, 1537 (11th Cir.1987) (concluding that a plaintiff's testimony could not be disregarded on summary judgment because the discrepancies in that testimony were not "incredible as a matter of law" or "blatantly inconsistent"); *United States v. Flores,* 572 F.3d 1254, 1263 (11th Cir.2009) (noting that testimony is only *incredible* as a matter of law if it relates

to facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature) (quotation marks omitted).

Here, there is nothing in the record to show that Ms. Khoury's "self-serving" statements are incredible as a matter of law.  In fact, the videos actually support Ms. Khoury's statements. Accordingly, summary judgment is inappropriate.   *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)(credibility determinations and the weighing of evidence "are jury functions, not those of a judge") quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

## II.    OFFICER WILLIAMS IS NOT ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity "shields government officials executing discretionary responsibilities from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Courson v. McMillian*, 939 F.2d 1479 (11th Cir. 1991) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  While qualified immunity gives government officials breathing room to make reasonable, but mistaken judgments, "[a] government actor is not entitled to immunity from suit when his conduct is "so obviously wrong, in light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing."  *Rowe v. Ft. Lauderdale,* 279 F. 3d 1271, 1280 (11th Cir. 2002)(citing *Lassiter v. Alabama A & M University, Board of Trustees,* 28 F.3d 1146, 1149 (11th Cir. 1994).

A trial court must evaluate the defense of qualified immunity by a two-step process.  First, a government official asserting the defense of qualified immunity must initially establish that he was acting within his discretionary authority.  *See Skop v. City of Atlanta,* 485 F.3d 1130 (11th Cir. 2007).  An officer's discretionary authority includes "actions taken pursuant to the

performance of his duties and within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559 (11th Cir. 1994).  Next, if the official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. *Skop,* 485 F.3d 1130 (11th Cir. 2007).

To overcome an official's qualified immunity defense, a plaintiff must establish that: (1) the officer's conduct violated a statutory or constitutional right; and (2) the violation of that right was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).   A plaintiff can "demonstrate that his right was clearly established in a number of ways." *Mercado v. City of Orlando,* 407 F.3d 1152, 1159 (11th Cir. 2005).  A plaintiff can show that "a materially similar case has already been decided, giving notice to the police," that "a broader, clearly established principle should control" his situation, or that "the officer's  conduct so obviously violates the [C]onstitution that prior case law is unnecessary." *See Cooper v. Rutherford,* 2012 WL 4856122 (11th Cir. 2012).

Here, Officer Williams asserts that he is entitled to qualified immunity on all of the counts against him, *i.e.* False Arrest (Count IV), Excessive Force (Count V), and First Amendment Retaliation (Count VI).  Officer Williams is wrong on all counts.

**a.  False Arrest / Illegal Seizure**

A fourth amendment seizure occurs where there is "a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372 (2007).  For a seizure to occur, a person must not be free to disregard the police and go about his business. *West v. Davis*, 767 F.3d 1063, 1069 (11th Cir. 2014).  "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner,* 471 U.S. 1 (1985).

In section 1983 cases, the presence or absence of probable cause determines the "reasonableness" of a seizure. *California v. Hodari D.,* 499 U.S. 621, 624 (1991). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect has committed or was committing a crime." *United States v. Floyd,* 281 F.3d 1346, 1348 (11th Cir. 2002) (per curiam) (quotation marks omitted). Whether an officer has probable cause to arrest is based on the totality of the circumstances. *Maryland v. Pringle,* 540 U.S. 366, 370 (2003).

In cases involving arrests or warrantless seizures, law enforcement officers are entitled to qualified immunity if they had arguable probable cause for the seizure. *Swint v. City of Wadley, Ala.,* 51 F.3d 988, 996 (11th Cir. 1995); *Eubanks v. Gerwen,* 40 F.3d 1157, 1160 (11th Cir. 1994). Arguable probable cause exists if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed." *Swint,* 51 F.3d at 996 (quotation marks omitted). Although the Supreme Court has recognized that law enforcement officers may make reasonable but mistaken judgments regarding probable cause, "this standard does not shield officers who *unreasonably* conclude that probable cause exists." *Skop v. City of Atlanta,* 485 F.3d 1130, 1137 (11th Cir. 2007).

Viewing the evidence in the light most favorable to Ms. Khoury, Officer Williams detained her without probable cause. For the last five years, the School Board has allowed Glades Baseball and Softball League ("GBSL") to overtake Glades Middle School and the area surrounding Ms. Khoury's home by conducting baseball games literally *every night* of the week. (KSMF at 10). GBSL participants and observers have destroyed residents' lawns, left trash in the yards, knocked down mailboxes, and run over plants. (KSMF at 11). Ms. Khoury and approximately 60 of her neighbors begged the School Board for help. (KSMF at 10). Ms. Khoury even appeared twice

before the School Board to express her concerns. The School Board promised change, but it never delivered.[6]  (KSMF at 10, 11).

On January 29, 2015, Ms. Khoury noticed two vehicles improperly parked in her neighborhood.  One of the gates to the field was also unlocked.  (KSMF at 100).  Ms. Khoury took a photograph with her phone so that she could document to the School Board that the parking/gate problem had not been resolved, as the School Board promised her.  (KSMF at 21).  Doris Zubillaga confronted Ms. Khoury because she thought that Ms. Khoury took a photograph of the license plate of her improperly parked car.  (KSMF at 21).  Ms. Zubillaga called the police.  (KSMF at 21).

Officer Williams arrived approximately 20 minutes later.  He spoke to Ms. Zubillaga first and then unlocked one of the gates to the field, which Ms. Khoury stated she found to be odd.  (KSMF at 29).  Officer Williams then walked across the street[7] to where Ms. Khoury was standing and lectured her about taking photographs.  (KSMF at 29, 31).  Officer Williams also claimed that cars next to the field were parked legally, even though one of the cars was illegally facing in the opposite direction of traffic.  Ms. Khoury, a former law enforcement officer herself, is completely surprised by Officer Williams' conclusion.  (KSMF at 31).  Ms. Khoury asked Officer Williams: "Why did you open the gate?" as she attempted to explain that the School Board agreed to keep it locked.  (KSMF at 31).  Officer Williams rudely stated, "Because I can open any of the gates anytime."  (KSMF at 31).

---

[6] The School Board promised to lock the gate adjacent to the field to force participants/observers to park in the school's parking lot instead of the street.
[7] Officer Williams slyly claims that Ms. Khoury refused to speak to Officer Williams near his police car, but intentionally leaves out the fact that Ms. Khoury did so because Ms. Zubillaga was standing in close proximity to the car, and that Ms. Khoury did not want to get into another confrontation with Ms. Zubillaga.  (KSMF at 29).  Ms. Khoury communicated this information to Officer Williams, which is why he walked over to her. (KSMF at 29).

Ms. Khoury then asked Officer Williams to identify himself, but he refused.  (KSMF at 32).   Officer Williams then walked back across the street and spoke to Ms. Zubillaga.  (KSMF at 32).  Ms. Khoury became skeptical of Officer Williams' intentions and turned on her cell phone video recorder to document her interactions with him.  (KSMF at 32).  While standing across the street, Ms. Khoury again asked Officer Williams for his name.  (KSMF at 32).  As seen on the video, Ms. Khoury stated, "Hey *officer,*[8] can you tell me your name please."  (KSMF at 100). Officer Williams refused to answer.  (KSMF at 100).

Ms. Khoury then walked across the street and attempted to record the license plate to Officer Williams' police cruiser, a common method to identify police officers who refuse to identify themselves.  (KSMF at 32).  As seen on the video, Ms. Khoury recorded Officer Williams's license plate while standing approximately 30-40 feet away him.  (KSMF at 33).  Ms. Khoury was not doing anything remotely illegal or threatening.  (KSMF at 33).  Nevertheless, when Officer Williams noticed Ms. Khoury recording him and his vehicle, he stated in a very menacing voice: "Why are you recording me!" (KSMF at 33).  Then, Officer Williams violently charged towards Ms. Khoury, grabbed her left arm, and twisted it behind her back.  (KSMF at 33).

Ms. Khoury, a 56 year-old, 5'3 woman, felt excruciating pain shoot down her arm and heard a cracking sound. (KSMF at 33).  She continued to scream in pain and begged Officer Williams to stop. (KSMF at 33).  Ms. Khoury believed that Officer Williams, a former military veteran with extensive training, was on the verge of breaking her arm.  Officer Williams continued to twist Ms. Khoury's arm and then pushed her to the ground.  (KSMF at 65).  Ms. Khoury

---

[8] As further explained below, the Defendant's contention that Ms. Khoury could not tell that Officer Williams was in fact a police officer is just not believable nor true.

obviously did not feel free to leave.  At this point, no reasonable police officer could believe that probable cause existed to detain Ms. Khoury for filming a police officer and his vehicle.

Nevertheless, Officer Williams continued his illegal conduct.  After Officer Williams pushed Ms. Khoury to the ground, he and an off-duty Homestead police officer, Victor Agosto, who was attending his son's baseball practice, handcuffed Ms. Khoury.[9]  (KSMF at 71).  Officer Williams then transported Ms. Khoury to Kendall Regional Hospital for an involuntary mental health examination under Florida's so-called Baker Act[10] even though no reasonable officer could have believed that Ms. Khoury: (1) had a mental illness; (2) was unable to determine for herself that an examination was necessary; and (3) was a danger to herself or other based on her recent behavior.  (KSMF at 83).  Therefore, Officer Williams violated Ms. Khoury's fourth amendment right against illegal seizure.

---

[9] Doris Zubillaga's daughter began recording the incident at this point.  Victor Agosto testified that he did not see how the incident started and was simply assisting one of his fellow officers with taking someone into custody.  (KSMF at 71).

[10] Florida's Baker Act, Fla. Stat. 394.463, provides:

> (1) A [police officer may transport a person] to a receiving facility for involuntary examination if there is reason to believe that the person **_has a mental illness_** and because of his or her mental illness:
>
> (a) 1.  The person has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination; or
> 2.  The person is unable to determine for himself or herself whether examination is necessary; **_and_**
> (b) 1.  Without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself; such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of other services; or
> 2.  **_There is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior_**.

In his motion for summary judgment, Officer Williams attempts to support his position with facts that are either undoubtedly disputed or based on his "unique" interpretation of those facts, *i.e.*: "Ms. Khoury did not understand that I was a police officer," "the cars were legally parked," "Ms. Khoury pushed me down to the ground," "Ms. Khoury said that I was attacking her."  [D.E. 147 at 10].  As explained above, Officer Williams' position is just not plausible.[11]

Officer Williams also claims that he "Baker-acted" Ms. Khoury because she was actively resisting him.  Officer Williams' claim is legally insufficient for several reasons.

First, the law does not require citizens to submit themselves to arrests that are unsupported by probable cause.  *See Robbins v. City of Miami Beach*, 613 So.2d 580 (Fla. 3d DCA 1993)(Robbins had a right to peacefully resist an unlawful arrest and that an arrest with probable cause); *Lee v. State*, 368 So.2d 395 (Fla. 3d DCA 1979)(Where prosecution did not prove the legality of the arrest which defendant resisted, an essential element of the crime of resisting an officer without violence was not established and the omission required reversal of defendant's conviction); *Baucham v. State*, 881 So.2d 95 (Fla. 1st DCA 2004)(nonviolent resistance to an unlawful arrest is no crime).  Since Officer Williams' was engaged in an unlawful activity, Ms. Khoury had no legal obligation to volunteer to be handcuffed.

Second, and equally important, before Ms. Khoury refused to place her hands behind her back, Officer Williams had already approached her, grabbed her by the arm, twisted it behind her

---

[11] Officer Williams also claims that the Miami Behavior Center found that Ms. Khoury suffers from acute psychosis.  While it is true that an intake receptionist, who Ms. Khoury refused to speak to, noted that Ms. Khoury suffered from acute psychosis, the receptionist did not list any of the symptoms and simply wrote on the chart that Ms. Khoury refused to speak to her.  When the ***doctor*** examined Ms. Khoury, the ***doctor*** made specific detailed findings that she did not find any evidence that Ms. Khoury suffered from a mental illness and released Ms. Khoury immediately.  The ***doctor*** did not recommend any follow-up visits or treatment.

back, dislocated her elbow, and threw her to the ground.  Officer Williams's after-the-fact justification, *i.e.* "she was resisting my unlawful actions," can neither excuse his bullying behavior, nor allow him to escape liability.  Otherwise, a police officer could simply walk up to a woman, beat her to a pulp, and then escape liability simply because she refused to acquiesce in his further abuse.  Officer Williams' position is baseless.

**b.   Right Against False Arrest Was Clearly Established.**

To determine whether an official violated a clearly-established right, courts must examine "whether the state of the law at the time of an incident provided fair warning" to the official that his or her conduct was unconstitutional.  *Tolan v. Cotton*, ____ U.S. ____, 134 S. Ct. 1861 (2014) (internal quotations omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)(citations omitted).  Thus, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)(citations omitted).

The Eleventh Circuit uses two methods to determine whether a reasonable officer would know that his conduct is unconstitutional. *May v. City of Nahunta, Georgia*, 846 F.3d 1320, 1331–32 (11th Cir. 2017)(citing *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011)). "The first method looks at the relevant case law[12] at the time of the violation; the right is clearly established if 'a concrete factual context exists so as to make it obvious to a reasonable government

---

[12] In this circuit, "clearly established law" comes from cases ruled upon by the Supreme Court, the Eleventh Circuit, or the State's highest court. *See Dukes v. Miami-Dade Cnty.,* 232 F. App'x 907, 911 (11th Cir. 2007); *Willingham v. Loughnan,* 321 F.3d 1299, 1304 (11th Cir. 2003).  *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003); *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

actor that his actions violate federal law.' " *May* at 1331; see also *Hadley v. Gutierrez*, 526 F.3d 1324, 1333 (11th Cir. 2008). "The second method looks not at case law, but at the officer's conduct, and inquires whether that conduct 'lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the officer, notwithstanding the lack of fact-specific case law.'" *May* at 1131-32 (quoting *Vinyard v. Wilson,* 311 F.3d at 1340, 1355 (11th Cir. 2002). "In such circumstances, the violation is obvious." *Evans*, 407 F.3d at 1282.

In wrongful arrest cases, the Eleventh Circuit has stated that a public official who "recklessly or deliberately" violates the law is not entitled to immunity under the arguable-probable-cause doctrine. *Kingsland v. City of Miami,* 382 F.3d 1220, 1233-34 (11th Cir. 2004)("The principles behind qualified immunity would be rendered meaningless if such immunity could be invoked to shelter officers who, because of their own interests, allegedly flout the law, abuse their authority, and deliberately imperil those they are employed to serve and protect.").

Based upon the facts of this case, a reasonable jury could find that Officer Williams violated Ms. Khoury's right against illegal seizures in two ways: (1) he illegally detained her for recording him;[13] and (2) he illegally used the Baker Act statute to transport her to the hospital for an involuntary mental health evaluation. The law provided "fair warning" to Officer Williams that detaining Ms. Khoury for either reason was unconstitutional. Furthermore, Officer Williams acted so "recklessly or deliberately" that he is not entitled to immunity under *Kingsland.*

---

[13] Obviously, there is no criminal charge of recording a police officer. Therefore, Officer Williams had to resort to another statute to detain Ms. Khoury.

The Eleventh Circuit established long ago that the First Amendment protects the act of photographing, filming, or otherwise recording police officers conducting their official duties in public. *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000)("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest.") citing *Blackston v. Alabama,* 30 F.3d 117, 120 (11th Cir.1994) (finding that plaintiffs' interest in filming public meetings is protected by the First Amendment); *Fordyce v. City of Seattle,* 55 F.3d 436, 439 (9th Cir.1995) (recognizing a "First Amendment right to film matters of public interest"); *United States v. Hastings,* 695 F.2d 1278, 1281 (11th Cir.1983) (finding that the press generally has no right to information superior to that of the general public) (citing *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 609 (1978); *Lambert v. Polk County,* 723 F. Supp. 128, 133 (S.D. Iowa 1989) ("[I]t is not just news organizations . . . who have First Amendment rights to make and display videotapes of events . . . ."); *cf. Williamson v. Mills,* 65 F.3d 155 (11th Cir.1995) (reversing district court's grant of qualified immunity to a law enforcement officer who seized the film of and arrested a participant in a demonstration for photographing undercover officers); see also *Fields v. City of Philadelphia*, 862 F.3d 353, 356 (3d Cir. 2017)("Every Circuit Court of Appeals to address this issue (First, Fifth, Seventh, Ninth, and Eleventh) has held that there is a First Amendment right to record police activity in public.").

The abovementioned Eleventh Circuit precedent makes it clear that a police officer cannot arrest a citizen for recording them in public. For example, in *Williamson v. Mills*, 65 F.3d 155 (11th Cir. 1995), an arrestee filed a civil rights lawsuit against a police officer for false arrest. The plaintiff in *Williamson* alleged that a police officer falsely arrested him for taking photographs of police officers. The officer in *Williamson* arrested the plaintiff for filming, but eventually let him

go after he turned over his film.  The Eleventh Circuit held that the police officer was not entitled to qualified immunity from the plaintiff's Fourth Amendment false arrest claim because the officer lacked probable cause to detain the plaintiff for taking pictures.  Equally important, the Eleventh Circuit found this to be a violation of a clearly-established right.  Thus, any reasonable police officer in Officer Williams' position would have clearly understood that arresting Ms. Khoury for filming him clearly violates the First Amendment.  *Id*; see also *Bowens v. Superintendent of Miami S. Beach Police Dep't*, 557 F. App'x 857, 863 (11th Cir. 2014)("Just as the plaintiffs in *Smith* had a right to film police officers in a public place, so too Bowens had a right to photograph Miami South Beach police.").

The Eleventh Circuit has held that, in the context of a mental-health seizure, it is clearly established that an officer must have probable cause to believe the person is dangerous either to himself or others. *May v. City of Nahunta, Georgia*, 846 F.3d 1320, 1327-28 (11th Cir. 2017) (citing *Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011).  Courts may find that the right is clearly established, even in the absence of case law. One such instance is where the case is one of "obvious clarity"—i.e., where the officer's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the official], notwithstanding the lack of fact-specific case law" on point. *Vinyard v. Wilson,* 311 F.3d 1340, 1355 (11th Cir.2002) (quoting *Lee,* 284 F.3d at 1199). Under this test, the law is clearly established, and qualified immunity can be overcome, only if every reasonable officer in [the defendant's] position would conclude that he lacked probable cause to detain an individual.  *Oliver v. Fiorino*, 586 F.3d 898, 907–08 (11th Cir. 2009).  As explained above, no reasonable officer could have believed that probable cause existed to "Baker Act" Ms. Khoury. Therefore, qualified immunity is inappropriate.  *Kingsland v. City of Miami,* 382 F.3d 1220, 1233-

34 (11th Cir. 2004)(in wrongful arrest cases, a public official who "recklessly or deliberately" violates the law is not entitled to immunity under the arguable-probable-cause doctrine).

### c.  Excessive Force

The fourth amendment's freedom from unreasonable searches and seizures encompasses the right to be free from excessive force during the course of a criminal apprehension. *Graham v. Connor,* 490 U.S. 386 (1989); *Mercado v. City of Orlando,* 407 F.3d 1152 (11th Cir. 2005). Excessive force claims under the Fourth Amendment are measured by an "objective reasonableness" standard. *Graham,* 490 U.S. at 388. In determining whether an officer's use of force was "objectively reasonable," courts consider a variety of factors including "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Moore v. Gwinnett County,* 967 F.2d 1495, 1498 (11th Cir.1992) (quoting *Leslie v. Ingram,* 786 F.2d 1533, 1536 (11th Cir. 1986)). Courts should also consider the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect actively resisted arrest or attempted to evade arrest by flight.  *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009).

Here, based upon the totality of circumstances, the amount of force used by Officer Williams was objectively unreasonable.  After Officer Williams noticed Ms. Khoury recording him, he maliciously charged toward her, grabbed her by the left arm, and twisted it behind her back, almost to the point of breaking it.  (KSMF at 67).  Ms. Khoury did not violate any law, she was not a threat to anyone, and she did not met Florida's Baker Act criteria.  (KSMF at 83).  Officer Williams was simply upset that Ms. Khoury recorded him and his vehicle.

In *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006), the Eleventh Circuit confronted a similar situation regarding the use of excessive force on citizens who neither committed a crime nor was a threat to anyone. *Id*. In *Davis*, a police officer involved in a traffic stop was blocking the only road leading to the plaintiff's home. *Id*. at 763. Since the plaintiff was expecting guest, he asked the officer to move his police car so that the plaintiff's guests could access the road. *Id*. The officer told the plaintiff to return to his home. *Id*. After a short dispute, the plaintiff walked away. *Id*. Nevertheless, the officer grabbed the plaintiff from behind, pushed him down to the ground, and tore his rotator cuff. *Id*. at 764. The plaintiff did not commit a crime and did not pose an immediate threat to anyone. *Id*. The Eleventh Circuit denied the police officer's motion for qualified immunity and ruled that such use of force is objectively unreasonable. *Id*. at 767.

*Davis* is materially indistinguishable from the facts of this case. Ms. Khoury did not violate any law and was not a threat to anyone when Officer Williams grabbed her arm, twisted it behind her back, and slammed her to the ground for no apparent reason. Ms. Khoury sustained a severely dislocated elbow, which required hospitalization and therapy. (KSMF at 74). Accordingly, her right against excessive force was clearly established.

All of the cases cited in the Defendants' motion are inapplicable because the officers there had probable cause to arrest the defendant. Ms. Khoury's incident is much more akin to cases where police officers had no cause whatsoever to detain an individual. *See Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1331–32 (11th Cir. 2006)(any use of force used in effectuating an unlawful arrest constitutes excessive force); see also *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008) (a punch in the stomach constitutes excessive force where the arrestee was not struggling or resisting); *Lee v. Ferraro*, 284 F.3d 188 (11th Cir. 2002) (a police officer used excessive force by slamming the plaintiff's head onto the hood of her car when she was

handcuffed, not posing a threat to the officer, and posing a flight risk).  Any reasonable officer in Officer Williams' position would have known that the use of such force was unlawful, and therefore, Officer Williams is not entitled to qualified immunity.

### d. First Amendment Retaliation

To state a first amendment retaliation claim, a plaintiff must establish "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). "A plaintiff suffers adverse action if the defendant's retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254.

Here, Ms. Khoury was exercising her first amendment right to record police officers. When Officer Williams noticed that Ms. Khoury was recording, he stated in a very menacing voice: "Why are you recording me!"  Officer Williams aggressively charged toward Ms. Khoury, grabbed her left arm, and twisted it behind her back, almost to the point of breaking it.  Officer Williams then handcuffed Ms. Khoury and transported her to a mental health facility, all in retaliation for video recording him.  Officer Williams' actions undoubtedly had an adverse effect on protected speech.

Viewed in the light most favorable to Ms. Khoury, any reasonable police officer would have recognized that Ms. Khoury was exercising her first amendment constitutional right to record police officers. *Williamson v. Mills*, 65 F.3d 155 (11th Cir. 1995); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Bowens v. Superintendent of Miami S. Beach Police Dep't*, 557 F. App'x 857, 863 (11th Cir. 2014).  Therefore, Officer Williams in not entitled to qualified immunity.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff, Susan Khoury, respectfully requests that this Court enter an Order denying the Defendant's Motion for Summary Judgment.

**Dated:** January 19, 2018.

Respectfully submitted,

Hilton Napoleon, II, Esq. FBN 17593
RASCO KLOCK PEREZ NIETO
2555 Ponce De Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7100
Facsimile: 305.476.7102

By: */s/ Hilton Napoleon, II*
Hilton Napoleon, II

20

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on January 19, 2018, I have filed the foregoing document with the Clerk of the Court using the CM/ECF system and that it is being served this day on all counsels of the parties of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  <u>/s/ *Hilton Napoleon, II*</u>
Hilton Napoleon, II