United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Susan Khoury, Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 16-20680-Civ-Scola |
| | ) |
| Gregory Williams, Defendant. | ) |

### Order

This matter is before the Court on Officer Gregory Williams' renewed motion for judgment as a matter of law and alternative motion for a new trial or remittitur. (**ECF No. 293**.) The motion is **denied** for the reasons below. Specifically, the Court **denies** Officer Williams' motion for judgment as a matter of law and **denies** his motion for a new trial/remittitur.

1. **Background**

Plaintiff Susan Khoury sued Officer Gregory Williams under 42 U.S.C. § 1983 after he committed her for an involuntary psychological evaluation pursuant to the Florida Mental Health Act, commonly known as the Baker Act. Ms. Khoury asserted multiple claims against Officer Williams including violations of her Fourth Amendment right to be free from unlawful seizures, the right to be free from the use of excessive force, retaliation for her exercise of her First Amendment right to record police officers, and parallel state law claims. The Court entered summary judgment in Officer Williams' favor on all counts, but the Eleventh Circuit reversed that decision and a jury trial followed.

The jury rendered a verdict in favor of Ms. Khoury and awarded her a total of $520,000 divided as follows: $20,000 for the reasonable value of medical care and supplies that Ms. Khoury reasonably needed and actually obtained; $50,000 for Ms. Khoury's physical injuries, including ill health, physical pain and suffering, disability, disfigurement, and discomfort that she experienced in the past; $250,000 for physical harm, pain, disability, disfigurement, or discomfort that Ms. Khoury was reasonably certain to experience in the future; $50,000 for Ms. Khoury's mental and emotional distress, impairment of reputation, and personal humiliation that she experienced in the past; and $150,000 for mental or emotional harm that Ms. Khoury is reasonably certain to experience in the future. (ECF No. 279.)

The jury answered special interrogatories in the verdict form. They specifically found that Officer Williams had a reasonable basis—even if mistaken—to believe that Ms. Khoury was exhibiting signs of mental illness in the events leading up to her involuntary commitment. But they also found that

Officer Williams did *not* have a reasonable basis to believe that Ms. Khoury would cause serious bodily harm to herself or others in the near future.

## 2. Discussion

Despite this, Officer Williams contends that he is entitled to qualified immunity against Ms. Khoury's claims because no reasonable jury could find that he lacked probable cause, or even arguable probable cause, to involuntarily commit her. In the alternative, he argues for a new trial or remittitur.

But before continuing, the Court addresses a brief housekeeping matter. Ms. Khoury argues Officer Williams waived his post-trial arguments on qualified immunity because at trial he "failed to articulate any factual or legal reasons why he was entitled to qualified immunity." (Opp. 12, ECF No. 298.) However, that is incorrect. Officer Williams argued then, as he does now, that there was insufficient evidence to enter a verdict against him because he had reason to believe that the criteria for involuntarily committing Ms. Khoury were met. (*See* Tr. Vol. 2 at 279, ECF No. 293-2.) Nothing about Officer Williams' post-trial arguments are novel to such an extent that they "ambush" Ms. Khoury. Accordingly, Officer Williams' arguments are justiciable on his current motion.

### A. Motion for judgment as a matter of law

A judgment as a matter of law is only appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party[.]" Fed. R. Civ. P. 50(a)(1). In considering a motion for this relief, the Court must "review the evidence, and the inferences arising therefrom, in the light most favorable to the non-moving party." *S.E.C. v. Ginsburg*, 362 F.3d 1292, 1297 (11th Cir. 2004). The Court "may not weigh the evidence or decide the credibility of witnesses . . . [h]owever, the nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law." *Id.* (cleaned up).

"Qualified immunity offers complete protection for government officials sued in their individual capacities when the official's conduct does not violate clearly established law." *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1125 (11th Cir. 2021). Officer Williams would have needed arguable probable cause to detain Ms. Khoury to invoke that protection. *See id.* at 1126. The Eleventh Circuit said arguable probable cause would exist here "if a reasonable officer, knowing the information Officer Williams possessed, could have believed that probable cause existed to involuntarily commit Ms. Khoury," but cautioned that "[v]ague notions about what a person might do—for example, a

belief about *some* likelihood that without treatment a person *might* cause *some* type of harm at *some* point—does not meet this standard." *Id.* (emphasis in original).

An officer has probable cause to involuntarily commit someone under the Baker Act, if he reasonably believes that: (1) the person has a mental illness, and (2) because of that mental illness, she will cause serious bodily harm to herself or others in the near future, as evidenced by recent behavior. *Id.*; Fla. Stat. § 394.463(1)(b)(2). Because the jury found that the first of these factors was met, only the second is at issue.

The Eleventh Circuit noted that Officer Williams made the decision to detain Ms. Khoury when "according to him, Ms. Khoury pushed him, they both fell to the ground and while he was in the process of trying to help her up, 'she went to screaming that I was attacking her.'" *Khoury*, 4 F.4th at 1127. And at trial, Officer Williams said he made the decision to detain Ms. Khoury after she placed her hands on him and insisted on making him move cars she said were illegally parked. (Tr. Vol. 2 at 235:1-17.)

To justify that decision in his motion, Officer Williams points the Court to a myriad of factors that he personally observed of Ms. Khoury, including "rapid speech, flight of thought, disconnected speech pattern and mood changes from high to low." (Mot. 8, ECF No. 293.) He also points to the testimony of others, including Sergeant Agusto who "observed [Ms. Khoury] as a threat potentially to herself and others including Officer Williams and bystanders." (*Id.* 9.)

However, many of the factors Officer Williams points the Court to are based on Ms. Khoury's attempts at resisting his efforts to detain her. That is, events that occurred *after* he made the decision to involuntarily commit Ms. Khoury. An example is the testimony of Sergeant Agusto, whose knowledge of the situation is limited to the point in time "after [Ms. Khoury] was already in handcuffs." (Tr. Vol. 3 at 57:25, ECF No. 293-3.) He testified at trial that he did not "see the interaction between her and Officer Williams prior to [his] getting involved and being told what was going on." (*Id.* at 58:21-23.)

Events and observations that occurred after Officer Williams decided to commit Ms. Khoury are not relevant to the question of whether he had arguable probable cause to detain her. The question is whether Officer Williams had arguable probable cause based on what he observed *before* he decided to detain her. Thus, the Court freezes the inquiry at the point in time in which Officer Williams said he made the decision to detain Ms. Khoury—that is, after she allegedly placed his hands on him. (Tr. Vol. 2 at 235:17.)

Once Ms. Khoury allegedly pushed Officer Williams, eyewitness Doris Zubillaga testified that "Officer Williams said 'Oh, no. We are not doing this.' And then he proceeded, he held her arm and walked her back to the car[.]" (Tr.

Vol. 3 at 112:10-13.) At that point, Officer Williams had already detained Ms. Khoury and it is thus *there* that the arguable probable cause inquiry ends. According to Ms. Zubillaga, Officer Williams later seemingly tried to handcuff Ms. Khoury, which is when Ms. Khoury allegedly "threw herself on the floor[,]" (*id.* at 113:15-21) and the bulk of the events that Officer Williams cites in his motion occurred.

If the facts leading up to Ms. Khoury's detention went undisputed, the Court could see how Officer Williams may have had a reasonable basis to believe that Ms. Khoury could harm others. Indeed, in such a scenario, Officer Williams would have had firsthand knowledge of Ms. Khoury placing her hands on him. But Ms. Khoury plainly testified that she did not push Officer Williams. (Tr. Vol. 1 at 169:3-6, ECF No. 293-1.) She testified that the physical contact that prompted Officer Williams' twisting her arm was Officer Williams' reaching for her phone and Ms. Khoury's trying "to turn away from him." (*Id.* at 168:1-15.) Thus, whether she pushed him or not was a question left for the jury.

The relevant factors Officer Williams cites as the basis for his decision to detain Ms. Khoury may be indicative of mental health illness, but they are not also automatically indicative of a risk of serious bodily harm. (*See* Mot. 8 (citing "rapid speech, flight of thought, disconnected speech pattern and mood changes.")) To recall, the Baker Act imposes the requirement that a person pose a risk of serious bodily harm to herself or others separate of—and *in addition to*—indicators of mental illness. *See* Fla. Stat. §§ 394.463(1), 394.463(1)(b)(2). This is a point the jury clearly understood when it found that Officer Williams had a reasonable basis to believe Ms. Khoury was mentally ill but did not have such a basis to believe she posed a threat to herself or others.

And in reviewing the record in the light most favorable to Ms. Khoury, it cannot be said that the jury had no basis to arrive at that latter conclusion. In his testimony, Officer Williams acknowledged that this was not Ms. Khoury's first run-in with Doris Zubillaga—the woman who called 911 to report Ms. Khoury that night. He testified that their previous run-ins had not resulted in harm:

> Q: Okay. That is a great point. I am glad you mentioned that. When you talked to Zubillaga – or Doris Zubillaga – she told you that there were prior run-ins with Ms. Khoury; right?
> A: That's correct.
> Q: And there was nothing about a gun; correct?
> A: No.
> Q: In the prior interactions?
> A: No.
> Q: Nothing about a knife; correct?
> A: No.

> Q: Nothing about a physical altercation or that she seriously harmed her or threatened to do serious harm to her? She was upset about the recording, that's it; correct?
>
> A: That is correct. You know, but in my understanding when these things continue to go on, they tend to escalate to a different level.

(Tr. Vol. 2 at 243:2-18.) Officer Williams also confirmed that he never wrote in his report that Ms. Khoury pushed him. (*Id.* at 244:23-25.) These pieces of evidence, paired with the conflicting testimony as to whether Ms. Khoury ever pushed Officer Williams prior to him detaining her, could readily serve as the basis upon which a reasonable jury could find that Officer Williams did not have a reasonable basis to suspect Ms. Khoury of posing a risk of serious bodily harm to herself or others.

The Court, of course, cannot definitively say that this testimony is what the jury relied on in this case. Nor does the Court purport to weigh evidence in favor of either party. What is clear is that an able jury has already played its role in this matter. Because there is a sufficient basis upon which a reasonable jury could have found that Officer Williams did not reasonably believe Ms. Khoury to pose a threat of serious bodily harm to herself or others, the Court does not disturb this finding.

Accordingly, as a matter of law, Officer Williams did not have arguable probable cause to involuntarily commit Ms. Khoury. By consequence, he is not entitled to qualified immunity.

### B. Motion for a new trial/remittitur

Officer Williams also argues that the jury's awards for medical care and future physical suffering are excessive and merit a new trial or remittitur pursuant to Federal Rule of Civil Procedure 59. (Mot. 16.)

"[A] new trial should be ordered only where the verdict is so excessive as to shock the conscience of the court." *Moses v. K-Mart Corp.*, 905 F. Supp. 1054, 1057 (S.D. Fla. 1995) (Atkins, J.), *aff'd*, 119 F.3d 10 (11th Cir. 1997). Where the verdict does not "shock the conscience of the court," remittitur is the appropriate remedy, if warranted. *See id.* "When considering a motion for remittitur, the standard for determining the appropriateness of the award is whether it 'exceeds the amount established by the evidence.'" *Id.* (quoting *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1448 (11th Cir. 1985)).

The contested portion of the jury's verdict is admittedly a sizeable sum ($270,000), but it is not "so exorbitant as to shock the judicial conscience." *Id.* at 1057. Thus, remittitur would be the proper device, if merited. In evaluating whether remittitur is appropriate, courts look to "(1)) the size of the award; (2)

the rational relationship between the award and the evidence adduced at trial; and (3) awards in similar cases." *Copley v. BAX Glob., Inc.*, 97 F. Supp. 2d 1164, 1172 (S.D. Fla. 2000) (Highsmith, J.).

Officer Williams requests remittitur of two portions of the verdict. *First*, he argues that the $20,000 award for Ms. Khoury's medical costs is excessive because Ms. Khoury only entered into evidence $12,795 in medical bills. (Reply 5.) Ms. Khoury contends that the $20,000 figure is appropriate because the medical bills introduced at trial have gone unpaid and likely have interest due on them over the course of at least half a decade. She also says she never received a bill from Kendall Regional Hospital, to which she was admitted after Officer Williams detained her, and speculates that the related bill is still owing. The Court thus finds that the $20,000 award goes supported by the record.

*Second*, Officer Williams contests the $250,000 awarded for physical harm, pain, disability, disfigurement, or discomfort that Ms. Khoury is reasonably certain to experience in the future. He asserts that $50,000 is the maximum proper figure for this category of damages. (Mot. 19; Reply 8.) In support of his position, Officer Williams points to Ms. Khoury's testimony that she has declined further treatment and that her arm is "fine now" except when she overextends it. (*See* Tr. Vol. 1 at 193-94.) In those cases, Ms. Khoury stops her activities to ice her elbow. (*See id.*)

But the record also contains Ms. Khoury's testimony that: (1) she was advised that her elbow likely needed surgery (*id.* at 193:11-15); and (2) as a result of the incident, Ms. Khoury suffered at least a permanent 10% impairment to her bodily functions, as measured in 2015 by chiropractor Dr. Aixa Goodrich. (Tr. Vol. 2 at 183-84.) That impairment includes Ms. Khoury's range of motion, strength, ability to use dexterity, and fine motor movements as a result of not only the injury to Ms. Khoury's elbow but also to her neck. Although that 10% impairment measurement was made in 2015 and Ms. Khoury did not present evidence of more recent examinations, Dr. Goodrich testified that Ms. Khoury's current symptoms are consistent with the impairment rating Dr. Goodrich arrived at. (*See id.* at 186:4-9.) Thus, some compensation for Ms. Khoury's future physical condition is certainly warranted.

The question is: How much? Officer Williams points the Court to similar cases with less sizable jury awards that Ms. Khoury's. For example, he proffers *Johnson v. White*, No. 3:15CV00543, 2019 WL 8222853 (N.D. Fla. Jan. 9, 2019), where a plaintiff received $150,000 in compensatory damages after he suffered, among others "a dislocated left shoulder, torn labrum and torn left bicep tendon, requiring surgery, a torn bicep tendon, nerve damage to his left shoulder[,]" as a result of police officers' use of force in arresting him. *Id.* Officer Williams also points the Court to *Davis v. Becht*, No. 6:03-cv-01519, 2007 WL

4523028 (M.D. Fla. Mar. 8, 2007). There, the plaintiff received only $20,000 for physical and emotional pain on an excessive force claim where an officer "pulled hard" on the plaintiff's shoulder. These cases show that compensatory damages for claims of physical harm do not follow a particular science. There are unique aspects to this case such as Ms. Khoury's untreated physical maladies and permanent impairment that may well impact Ms. Khoury as she ages.

For these reasons, the Court agrees with jury's award for Ms. Khoury's future physical harm, pain, disability, disfigurement, or discomfort.

### 3. Conclusion

In sum, the Court does not disturb the jury's verdict. The Court **denies** Officer Williams' motion (**ECF No. 293**). In particular, his request for judgment as a matter of law is **denied** and the alternative motion for a new trial/remittitur is also **denied**.

**Done and ordered** in Miami, Florida, on June 22, 2022.

Robert N. Scola, Jr.
United States District Judge